Filed 1/14/14; pub. order 2/11/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GISELA BURQUET, | B248031 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BQ039688) |
| v. | |
| RANDY BRUMBAUGH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Thomas Trent Lewis, Judge. Affirmed.

Michael Anthony Cisneros for Defendant and Appellant.

Gisela Burquet, in pro.per.

Appellant, Randy Brumbaugh[1] appeals from a March 20, 2013 order granting a restraining order, issued pursuant to the California Domestic Violence Protection Act ("DVPA").

## PROCEDURAL HISTORY

On February 20, 2013 plaintiff[2] submitted to the trial court an application for a DVPA ex parte restraining order, requesting therein that defendant be ordered to stay at least 200 yards away from plaintiff, her home, job, school, and vehicle. The court granted the ex parte restraining order on that date, but limited its scope to plaintiff's person and home and limited it to 100 yards. On March 4, 2013, defendant filed his Response to the request for Domestic Violence Restraining Order. The hearing on Plaintiff's request for a further injunction after hearing was called for hearing on March 20, 2013. At the conclusion of the hearing the trial court made the following ruling: "The Court has read and considered the Petitioner's [Plaintiff's] request for a restraining order and after hearing testimony from both sides, the Court finds good cause that warrants the granting of a restraining order. [¶] RESTRAINING ORDER IS GRANTED and in effect [sic] until 3/20/15. The Court makes its orders pursuant to the *Clets Order After Hearing"* signed and filed this date. A copy of the order is presented to the parties in open court." On April 8, 2013, defendant filed his Notice of Appeal.

---

[1] Plaintiff's failure to file a Respondent's Brief does not affect the defendant's burden to prove that the trial court abused its discretion when it issued the Domestic Violence Protection Act restraining order. (See *Votaw Precision Tool v. Air Canada* (1976) 60 Cal.App.3d 52, 55.)

[2] In the interest of clarity we refer to the appellant as defendant and respondent as plaintiff.

## SUMMARY OF FACTS AND DISCUSSION OF THE LAW

The evidence presented at the hearing, accepting as true all evidence tending to establish the correctness of the trial court's findings and resolving every conflict in favor of the judgment is as follows: The parties had an intimate relationship which terminated in April of 2012. Plaintiff terminated the relationship and defendant could not accept it. He kept contacting her. Between June and October of 2012 plaintiff asked defendant several times to not contact her. Despite her requests that he cease contacting her, defendant continued to do so beseeching her to renew their intimate relationship. His communications were inappropriate and contained sexual innuendos. She constantly turned down his overtures and requested that he stop contacting her and each time he would get angry. The last time she asked him to not contact her was on October 31, 2012, subsequent thereto he continued to contact her by email and text. On February 18, 2013, defendant, unannounced and uninvited, and despite plaintiff's requests that he not contact her, appeared outside her residence. He knocked on the door and plaintiff opened it but did not invite him inside. After a short conversation she told him to respect her wishes and to leave. "He got angry. He started saying very-- in a loud voice "I love you, I don't know, I'm sorry." She was afraid of what he was going to do, and said "Please leave, I'm scared. I will call the police. And that's when he shouted at me through my door window, I want to see you do that." Defendant still did not leave, he paced around her porch for about 10 minutes. After about ten minutes he called her from his cell phone and told her he was leaving. He asked her not to be scared, but she was scared because he was angry. On two prior occasions during their relationship when he had gotten angry he became physical with her. He left before the police arrived.

After hearing all of the evidence the Court stated in part when making its ruling: [¶] "All right. There's enough here for a restraining order. I'm granting a restraining order. [¶] It just doesn't make sense that Mr. Brumbaugh would show up five months later out of nowhere unannounced, uninvited, stick around, not leave when asked to leave and pace around the porch. It just was at least immature, if not threatening. . . . [¶] I see uninvited contact that made the petitioner afraid because he would not leave and showed

3

up of nowhere uninvited, and unannounced. And so the restraining order will expire on March 20, 2015. Two years from now you guys should be enough done with each other that it's time to move on with life, which it sounds like that's what you want. . . .[¶] I do think the evidence here is enough to make me concerned and assure the peace and tranquility of the Petitioner." Defendant seeks a reversal of the trial court's decision based upon his contention that the trial court abused its discretion in issuing the restraining order. He argues that though the parties had been in a past dating relationship, no evidence was presented to the trial court of past act or acts of "abuse."

A granting or denial of injunctive relief is generally reviewed by the appellate court based upon the abuse of discretion standard. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850). This standard applies to the grant or denial of protective order under the DVPA. (See *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1265). In reviewing the evidence, the reviewing court must apply the "substantial evidence standard of review," meaning "'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the trial court's finding. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) 'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings resolving every conflict in favor of the judgment.'" (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.)

Family Code section 6203 provides that "For purposes of this act, [DVPA] 'abuse' means any of the following:

(a) Intentionally or recklessly to cause or attempt to cause bodily injury.

(b) Sexual assault.

(c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another.

(d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320."

4

Family Code section 6211 provides in part: "'Domestic violence' is abuse perpetrated against any of the following persons . . . (c) a person with whom the respondent is having or has had a dating or engagement relationship." Family Code Section 6320(a) provides: "The court may issue an . . . order enjoining a party from molesting , attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting , either directly or indirectly, by mail or otherwise, coming within a specified distance, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members."

It is clear from the trial court's statements at the time that it made its ruling [see above] that the court granted Plaintiff an injunction pursuant to Section 6320 based upon its finding that defendant had violated sub-section (d) of Section 6203(d), referring to that portion of Section 6320 which states "or disturbing the peace of the other party . . ." There were as set forth above, substantial facts presented at the hearing to support the trial court's decision that the defendant, because of his inability to accept that his romantic relationship with the plaintiff was over, and despite plaintiff's numerous requests that he not contact her, was engaging in a course of conduct of contacting plaintiff by phone, email, and text, which messages contained inappropriate sexual innuendos, and arriving  at her residence unannounced and uninvited, and then refusing to leave and making a scene, when she refused to see him for the purpose of causing her to renew their romantic relationship.  The result of which actions by defendant "disturbed the peace of the other party."  Such a disturbance of plaintiff's "peace" in the present case constitutes an act of "abuse" under the DVPA.

Defendant contends, however, that there was insufficient evidence presented to the trial court to support a finding of "disturbing the peace" of plaintiff to allow the trial court to issue a DVPA restraining  order and that the court's order exceeded "the bounds of reason." (See *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413).  He urges this court in determining whether the trial court abused its discretion in finding an act of "abuse"

5

under the DVPA, based upon "disturbing the peace of another," to follow the definition of disturbing the peace as set forth in *In re Bushman* [3] (1970) 1 Cal. 3d 767, 773, where the California Supreme Court in a case not involving the DVPA defined disturbing the peace, as that language is used in Penal Code section 415, for criminal law purposes, as the "disruption of public order by acts that are themselves violent or that tend to incite violence." He then specifically asks this court in arriving at its decision to reject the holding in *In re Marriage of Nadkarni* (2009)173 Cal.App.4th1483, 1494 wherein in a case involving the DVPA the appellate court held as follows: "For purposes of the DVPA, "'abuse" means any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury. [¶] (b) Sexual assault. [¶] (c) To place a person in reasonable apprehension or imminent serious bodily injury to that person or to another. [¶] (d) *to engage in any behavior that has been or could be enjoined pursuant to Section 6320.*' [Citation.] [¶] Section 6320 provides in part that '[t]he court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexual assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court on a showing of good cause, of other named family or household members.'. . . . [¶] Thus, section 6320 provides that 'the requisite abuse need not be actual physical injury or assault.' (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 202.) To the contrary, section 6320 lists several types of nonviolent conduct that may constitute abuse within the meaning of the DVPA, including two types of conduct relevant to the present case. . . . [¶] Second, section 6320 broadly provides that 'disturbing the peace of the other party' constitutes abuse for purposes of the DVPA. The DVPA does not

---

[3] The case of *In re Bushman* involved the application of section 415 of the Penal Code, which makes a violation of that section a misdemeanor punishable by a fine and up to six months imprisonment in the county jail. Section 415 has nothing to do with the DPVA or the purpose of the DPVA.

6

provide any definition of the phrase 'disturbing the peace of the other party,' and we therefore turn to the rules of statutory construction to determine the meaning of the phrase and whether Datta's conduct, as alleged by Darshana in her declaration may constitute with the meaning of the DVPA. [¶] 'In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]' (*Estate of Griswold* (2001) 25 Cal.4th 904, 910-911.) '"We begin by examining the statutory language, giving the words their usual and ordinary meaning." [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such cases, we ""select the construction that comports must closely with the apparent intent of the Legislature, with a view of to promoting, rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."" [Citation.]' [Citation.] [¶] To determine the plain meaning of the statutory language, we may resort to the dictionary. 'When attempting to ascertain the ordinary, usual meaning of a word [in a statute], courts appropriately refer to the dictionary definition of that word.' (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.) The ordinary meaning of 'disturb' is '[t]o agitate and destroy (quiet, peace, rest); to break up the quiet, tranquility, or rest (of a person, . . . , etc); to stir up, trouble, disquiet.' (Oxford English Dictionary Online (2d ed.1989) http://www.oed.com. [as of April 24, 2009.] 'Peace,' as a condition of the individual, is ordinarily defined as 'freedom from anxiety, disturbance (emotional, mental or spiritual,) or inner conflict, calm, tranquility.' (*Ibid.*) Thus the plain meaning of the phrase 'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroy the mental or emotional calm of the other party. [¶] Our interpretation of the phrase 'disturbing the peace of the other party' in section 6320 also comports with the legislative history of the DVPA. As enacted in 1993 (Stats.1993,

ch. 219, § 154, p.1654), the DVPA collected earlier provisions for the issue of domestic violence restraining orders from the former Family Law Act (Civ. Code former Sec. 4359), the former Domestic Violence Prevention Act (Code Civ. Proc. former Sec. 540 et seq.) foll.sec..6200, p. 675.) These provisions all expressly authorized a domestic violence restraining order that enjoined 'disturbing the peace' of the other party. [Citations Omitted]. . . .[¶] Accordingly, we believe that the Legislature intended that the DVPA be broadly construed in order to accomplish the purpose of the DVPA. Therefore, the plain meaning of the phrase 'disturbing the peace' in section 6320 may include, as abuse within the meaning of the DVPA, a former husband's alleged conduct in destroying the mental or emotional calm of his former wife. . . ." (*In re Marriage of Nadkarni, supra*, 173 Cal.App.4th at pp. 1496-1498.)

The definition of disturbing the peace as set forth in of section 415 of the Penal Code [since amended] as set forth in *Bushman, supra,* is not applicable to the meaning of the phrase "disturbing the peace of the other party" as used in the DVPA. The decision of the appellate court in *In re Marriage of Nadkarni,* as to the statutory interpretation of the phrase "disturbing the peace of the other party" as set forth in section 6320 of the DVPA is well reasoned, and this court adopts this position in regard to the present case. There was substantial evidence presented at trial to support the trial court's finding that defendant disturbed the peace of the plaintiff, an act of "abuse" under the DVPA.

## DISPOSITION

The March 13, 2013 order restraining defendant's conduct pursuant to the provisions of the DVPA, is affirmed.  The respondent is awarded her costs on appeal.


MINK, J.[*]


We concur:


TURNER, P. J.


KRIEGLER, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GISELA BURQUET, | B248031 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BQ039688) |
| v. | |
| RANDY BRUMBAUGH, | |
| Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on filed January 14, 2014 was not certified for publication in the Official Reports. Upon application of interested parties and good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

_____

MINK, J.[*]                TURNER, P. J.                KRIEGLER, J.

---

[*]     **Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.**

11