Filed 4/29/16  Wagner v. Broderick CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRACY WAGNER,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>AARON BRODERICK,<br><br>  Defendant and Appellant. | B260375<br><br>(Los Angeles County<br>Super. Ct. No.YD054842) |

Appeal from an order of the Superior Court of Los Angeles County.  John A. Slawson, Judge.  Affirmed.

Tritt & Tritt and James F. Tritt for Defendant and Appellant.

Law Offices of Robert Brode and Robert E. Brode for Plaintiff and Respondent.

_____

Aaron Broderick appeals from the superior court's grant of a domestic violence restraining order sought by Tracy Wagner, Broderick's ex-wife. Because there was substantial evidence to support the court's finding that Broderick disturbed the peace of Wagner, which constitutes an act of "abuse" under the Domestic Violence Protection Act, we affirm the order.

## FACTS AND PROCEEDING BELOW

Tracy Wagner and Aaron Broderick were married on April 27, 2006. Their son, Jayden, was born in July 2007. They separated on October 20, 2008. On October 23, 2008, Wagner filed a petition for dissolution of marriage requesting joint legal custody and primary physical custody of their son, and visitation for Broderick. On May 5, 2011, after years of litigation, the court entered a stipulated judgment of dissolution which included provisions for custody and visitation. On October 3, 2014, Wagner filed an ex parte request for a domestic violence restraining order (DVRO), which was temporarily granted pending a hearing on October 23, 2014. On October 20, 2014, Broderick filed his response to the request for DVRO.

On October 23, 2014, the court held a hearing on the request for DVRO. Wagner was represented by an attorney and Broderick represented himself. [1] At the hearing, Wagner testified that on 10 to 12 occasions, Broderick appeared to be photographing and/or videotaping her with his cell phone. Wagner explained that she was an assistant coach of Jayden's soccer team, which met to practice on a weekly basis. Broderick would arrive at practice and place his cellular phone camera 10 inches away from Wagner's face for a "couple of minutes," appearing to videotape her.

At the hearing, Broderick questioned Wagner, asking her if she had told anyone about his alleged videotaping. She responded affirmatively, noting that she had told her attorney and "other people that have noticed it." Broderick then asked if Wagner recalled

---

[1] The October 23, 2014 hearing took place throughout the day with multiple recesses due to other matters on the court's calendar. At the end of the day, the court continued the hearing to the next day, October 24, 2014, to discuss the details of the DVRO. On that date, Broderick was represented by counsel.

the names of the people she told. She answered, "Sure." Before she was able to provide the names, the court interjected, asking Broderick why it was relevant. Broderick explained that "[i]f she's in fear of her safety, and it's something that makes her uncomfortable, you would think that she would notify someone immediately." The court then asked, "Do the specific names matter then?" Broderick responded, "If she mentioned it to the grocery clerk, then it shows that it wasn't important, but if she mentioned it to people that were there that may have witnessed it, I can see that's relevant." The court noted that Broderick made a good point, but continued, "I don't find that relevant. She says she's notified other people about it or discussed it with them." The court then asked Wagner how many people she estimated notifying. Wagner replied that she had told four or five people, and the court directed Broderick to move on to another topic.

Wagner then recounted the events of October 1, 2014. She took Jayden to a dental appointment for his annual cleaning. Wagner knew that it was possible that Broderick would attend the dental appointment because she had given him notice of it via their Family Wizard calendar. Wagner explained that, being fearful of Broderick, she called ahead to the dentist's office and asked the staff if they could "set [the] chairs apart from each other in case [Broderick] were to show up." The staff at the dentist office accommodated her request and set the chairs apart. Upon arriving at the appointment, however, Broderick moved his chair a few inches away from Wagner's chair and appeared to be videotaping her.

After the appointment ended, Wagner attempted to say goodbye to Broderick and remain in the office with Jayden to allow Broderick time to leave first "so that [she] wouldn't be alone with him in the parking lot." Broderick, however, waited in the parking lot for Wagner and Jayden. Wagner stated that Broderick had parked his car in the spot directly next to her car. Broderick placed his head out the window and yelled at Wagner when she walked by his car, which scared her. He also appeared to be photographing or videotaping her with his camera through his car window.

3

Later that afternoon, Broderick arrived at Jayden's soccer practice and, when it ended, sat in his car and appeared to be videotaping Wagner for several minutes through his car window. As Wagner was leaving practice, Broderick exited his car and approached her in an intimidating manner, forcing her to back up into her car mirror. At that moment, Wagner saw another parent and called out to the parent, and Broderick "turn[ed] around with the phone and [went] back to his car, [sat] in the car and, again, [sat] there with the phone, holding it in the video [mode], with . . . a smirk on his face."

That evening, Wagner took Jayden to "family fun night" at his school. When they arrived, Broderick was in his car, leaving the event. Upon seeing Wagner and Jayden, Broderick returned to the event and walked into the school behind Wagner and Jayden. Wagner told Broderick that he was making her uncomfortable.

Wagner's counsel stated that Wagner's boyfriend, a police officer, was available as a witness to testify that he observed Broderick videotaping Wagner on "numerous occasions," but "because of time constraints," counsel would not call him.

Broderick, for his part, denied ever taping Wagner and stated that there were "no photos, no videos, zero."

The court noted that "it's pretty clear to me [that Wagner] is not making this up, as far as her feelings, but feelings aren't enough. There needs to be affirmative acts by the other side that fall within [the DVPA]." After hearing further testimony, the court granted the restraining order for a three-year period, stating that it found Wagner to be credible, and Broderick's constant videotaping, or appearance of videotaping, was "disturbing mother's peace," which constituted domestic violence under the DVPA. The court noted that the DVRO needed to be crafted narrowly so it would not implicate custody of Jayden or Broderick's ability to spend time with his son. The court directed the parties to draft a proposed DVRO, and ordered the parties to return the following day to finalize it.

On October 24, 2014, when the court reconvened Broderick was represented by counsel. Counsel asked the court whether Broderick had an opportunity to testify and make "any arguments." The court explained that Broderick testified and cross-examined

4

Wagner, and the case had a "very large record" and was "a very bitter case, very difficult case," and the hearing on the DVRO had a "very thorough transcript." The court further noted that "the overwhelming majority of the decision was a credibility call . . . The court found any reasonable person in mother's position would have come to the same conclusion" that having a video camera "within 10 inches of her face" on multiple occasions satisfied the standard for a DVRO. Ultimately, the court ordered Broderick to stay 15 feet away from Wagner and not give the appearance that he is videotaping or photographing Wagner at any time.

Broderick timely appealed the DVRO.

## DISCUSSION

We review a trial court's granting of a protective order under the Domestic Violence Prevention Act (DVPA) for abuse of discretion. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) In reviewing the evidence, we apply the substantial evidence standard of review, and we defer to the trial court on issues of credibility. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

On appeal, Broderick argues that the court erred by granting the DVRO solely based on Wagner's subjective perception of abuse. We disagree.

Family Code section 6320, subdivision (a) provides that a court may issue an order under the DVPA enjoining a party from "disturbing the peace" of another party. Although the DVPA does not provide a definition for "disturbing the peace," several Court of Appeal opinions have held that "disturbing the peace" under section 6320 includes conduct that "destroys the mental or emotional calm of the other party." (*Burquet v. Brumbaugh*, *supra*, 223 Cal.App.4th at p. 1146; *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) Here, Wagner testified that Broderick placed his cellular phone within 10 inches of her face, appearing to videotape or photograph her, for minutes at a time on a weekly basis for two months at soccer practices and at Jayden's dentist appointment. The court found that Broderick's behavior disturbed Wagner's peace, or destroyed her mental or emotional calm, and similarly would do so to a

reasonable person in Wagner's position. In so finding, the court did not abuse its discretion.

Broderick attempts to distinguish *Burquet* by arguing that, in *Burquet*, an ex-boyfriend, unable to accept that his romantic relationship was over, engaged in "an unrelenting course of conduct, with sexual overtones." But nothing in the DVPA or the case law requires the abuse at issue to be sexual in nature, and we reject such a requirement.

Broderick also argues on appeal that the trial court erred by ruling that he could not elicit the names of the individuals that Wagner told about his conduct, contending that this information could have undermined Wagner's credibility. We disagree.

Broderick never argued to the court that he intended to call the unnamed individuals as witnesses or that their identities would undermine Wagner's credibility. Rather, when questioned by the court as to why the names of the people Wagner told were relevant, Broderick responded, "If she mentioned it to the grocery clerk, then it shows that it wasn't important, but if she mentioned it to people that were there that may have witnessed it, I can see that's relevant." The mere recitation of their names by Wagner, however, would have had little, if any, probative value regarding her credibility. Thus, the ruling was not error.

Finally, Broderick contends that the trial court erred by not allowing him to "argue his case" and "tell his story" before issuing its decision. We disagree. Both parties were sworn in at the beginning of the hearing. Although the court did not require Broderick to separately testify and argue, it allowed him to "tell his story" and argue through his narrative presentation. Indeed, he testified that he never videotaped or photographed Wagner and argued that Wagner was not credible. Further, Broderick has not shown prejudice: He points to no additional evidence or argument that he would have made if permitted more time for his defense.

The court weighed the evidence and determined that Wagner's testimony was credible and Broderick's was not, and that Broderick's actions warranted a DVRO. This credibility call and determination were supported by substantial evidence.

6

**DISPOSITION**

The trial court's DVRO is affirmed.  Parties to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                    ROTHSCHILD, P. J.

We concur:



        CHANEY, J.



        LUI, J.