Filed 6/21/16  Phillips v. Campbell CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| AMY LEE PHILLIPS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES EUGENE CAMPBELL, JR.,<br><br>    Defendant and Appellant. | 2d Civil No. B263353<br>(Super. Ct. No. 15FL-0054)<br>(San Luis Obispo County) |

James Eugene Campbell, Jr., appearing in propria persona, appeals from a five-year domestic violence restraining order prohibiting him from harassing or contacting Amy Lee Phillips, respondent, and compelling him to stay at least 500 yards away from her person, residence, and workplace.  Appellant claims that the trial court (1) erroneously denied his motion to dismiss the case, (2) erroneously found that a dating relationship had existed between the parties, and (3) violated his First Amendment rights of freedom of speech and expression.  We affirm.

*Factual and Procedural Background*

In March 2013 a Tennessee court issued a protective order requiring appellant to stay away from and have no contact with respondent.  The order expired in March 2014.

In January 2015 in California, respondent applied for a domestic violence restraining order against appellant.  Respondent, a professional cyclist, declared that she

had "met [appellant] 2 1/2 years ago through cycling." She had been friends with him for several months. Appellant "expressed an interest in moving forward in [the] relationship," but respondent "informed [him] that [she] was not interested in moving forward . . . , and [she] wanted to just be friends." Thereafter, appellant repeatedly harassed her by sending text messages to her, posting her personal information and photos of her on Facebook, posting videos of her on YouTube, and sending "private messages to individuals sharing personal information about [her]." In text messages to respondent, appellant called her a "psycho evil witch" and "a compulsive liar" who had "lied" about him and "destroyed [his] life."

The matter was set for a hearing on February 19, 2015. On that date, respondent's counsel appeared in court. Respondent was "on a bicycle Tour in New Zealand." Appellant, who lived in Florida, appeared in propria persona via the telephone ("court call").

At the beginning of the hearing, appellant told the court: "[M]y understanding is the [respondent] has chosen to be out of the country, knowing that the court date was today. I would ask that the court dismiss the case." The court did not rule on the motion. It put the matter over until 3:15 p.m. At that time, the court said, "This case . . . is going to take a lot longer. It looks like we may have to put you guys over." The court continued the hearing to February 26, 2015. Appellant did not object.

On February 26, 2015, appellant again appeared in propria persona via the telephone. Respondent was personally present with her counsel. After extensive argument, the trial court found that "there was a relationship [between the parties] that qualifies as a dating relationship and that the communications and interaction from [appellant] to [respondent] qualifies for a domestic violence restraining order protecting [respondent]."

*Motion to Dismiss*

Appellant contends that, at the hearing on February 19, 2015, the trial court erroneously denied his motion to dismiss. But the court did not deny the motion. It never ruled on the motion, and appellant did not press for a ruling. He did not object to

2

the continuance of the hearing to February 26, 2015. "[H]is failure to press for a ruling [and to object to a continuance] waives the issue on appeal. [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 984; see also *In re Richard H.* (1991) 234 Cal.App.3d 1351, 1362 ["Since appellant did not object to any of the continuances, he has waived his right to claim any harm from the delay"].)

Had the trial court denied the motion to dismiss, we would have upheld its ruling. Appellant's motion was based on respondent's failure to be personally present at the hearing, even though her counsel was present. Appellant relies on former Family Code section 243, subdivision (a).[1] It provided: "When the matter first comes up for hearing, the petitioner must be ready to proceed."[2] Appellant has failed to show that respondent's counsel was not ready to proceed. The statute did not provide that the petitioner must be personally present.

### *Dating Relationship*

Respondent sought a restraining order pursuant to the Domestic Violence Prevention Act. (§ 6200 et seq.) Such an order may be granted where the parties are "having or [have] had a dating . . . relationship." (§§ 6211, subd. (c), 6301, subd. (a).) "'Dating relationship' means frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement independent of financial considerations." (§ 6210.) Appellant contends that the trial court erroneously found that a dating relationship had existed between the parties. He characterizes their former relationship as "best friends." (Capitalization omitted.)

We review the court's finding for substantial evidence. (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975.) "The ultimate determination is whether a *reasonable* trier of fact could have found [the existence of a dating relationship] based on the *whole* record. [Citation.]" (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) "We resolve all factual conflicts and questions of credibility in favor of the

---

[1] All statutory references are to the Family Code unless otherwise stated.

[2] The quoted language was eliminated by a 2015 amendment that became effective on January 1, 2016. (Stats. 2015, ch. 411, § 5.)

prevailing party and indulge all reasonable inferences to support the trial court's order. [Citation.]" (*Horsford v. Board of Trustees of California State Univ.* (2005) 132 Cal.App.4th 359, 390.) "[T]he substantial evidence standard of review is generally considered the most difficult standard of review to meet. . . . In deciding whether to raise a substantial evidence claim on appeal, appellate counsel should keep in mind that the appellate court 'accept[s] the evidence most favorable to the order as true and discard[s] the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.' [Citation.]" (*In re Michael G.* (2012) 203 Cal.App.4th 580, 595.)

Substantial evidence supports the trial court's finding of the existence of a dating relationship. Viewing the evidence in the light most favorable to respondent and resolving all factual conflicts in her favor, a reasonable trier of fact could conclude that the parties had "frequent, intimate associations primarily characterized by the expectation of affection . . . ." (§ 6210.) Respondent declared: "We were friends for several months. During that time, we spent time together, dined out on occasion, and [appellant] stayed in my home for several days . . . ." Respondent sent a message to appellant stating, "[Y]ou have a hold on me emotionally . . . [I] don't know why, and it's been strong . . . ." She also said, "You do have a soft kiss." Appellant replied, "[T]hank you." In an email to appellant dated November 22, 2012, respondent said, "[T]hat hug in the doorway and your hand on my lower back felt good." She continued, "[T]he moments we were close (either wrestling on the couch, or when you were laying in bed with me), seemed more platonic, versus romantic." Respondent referred to "[t]he time we've both invested to build our relationship over the past 7 months, . . . strengthening our love and respect for each other."

In his communications with respondent after they had broken up, appellant indicated that he considered their relationship to have been more than a mere friendship. He accused her of "leading [him] on" while she was dating someone else. Appellant wrote: "What do u call telling me u love me but ur screwing someone else?" "You can combine all those guys you have slept with, and it still did not do for you what I did." "Didn't you tell me you wld always remember me and what a huge impact I had on your

4

heart and life?"  "At least I wont hv to deal with u ever again.  How does tht make u feel that [the] only guy [i.e., appellant] u fell in love with ever would rather be dead than hear or see from u again?"  "Ppl [people are] probably confused after u lying so much about me but then seeing how much love you had for me."  At the hearing on February 26, 2015, appellant told the court that "[respondent] was falling in love with me."

In the email to appellant dated November 22, 2012, respondent said that they were "just remaining friends" and "weren't dating, whether casually, socially, or non-committed dating."  The trial court was not required to accept, and did not accept, this characterization of the parties' relationship.  The court stated: "[A]lthough in one portion [of the email respondent] says . . . something about, 'We don't have a dating relationship,' you do have a relationship by this evidence.  All of the evidence shows there was an expectation of affection or desire to have affection . . . .  So although you guys may have called it 'We are not dating' or 'We don't want to date,' you certainly have all the attributes, it looks like, [of a dating relationship] under [section] 6210 of the Family Code."

When appellant protested that he had never actually gone on a date with respondent, the court replied: "What I have seen in these papers is that you guys had lots of communication, that you actually stayed at her residence . . . .  So that's where I'm seeing there was something more to this than to say, 'We never went on a date.' "  We concur in the trial court's reasoning.

*First Amendment*

The trial court ordered appellant to "not post photographs, videos, or information about [respondent] to any internet site" and to "remove the same from any internet site over which he has access or control."  Appellant argues that the order violated his "First Amendment rights of freedom of speech and expression."  He explains: "Appellant's pictures and postings are innocuous toward [respondent] . . . .  None of appellant's postings or photos are derogatory, threatening, . . . or violate any other item covered under the First Amendment."

5

Appellant "did not raise [this] constitutional issue[] below and do[es] not explain why [it is] being raised for the first time on appeal. [¶] Points not raised in the trial court will not be considered on appeal. [Citation.] 'Even a constitutional right must be raised at the trial level to preserve the issue on appeal [citation].' [Citation.] In civil cases, constitutional questions not raised in the trial court are considered waived. [Citation.]" (*Hepner v. Franchise Tax Board* (1997) 52 Cal.App.4th 1475, 1486.)

Moreover, appellant forfeited the issue because he has failed to present meaningful legal and factual analysis, with supporting citations to pertinent authority and the record, on why his first amendment rights were violated. "Under well-established principles of appellate review, '[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] . . .' [Appellant's] conclusory assertion[] [that his First Amendment rights were violated] fail[s] to properly tender the issue for appellate review." (*Saltonstall v. City of Sacramento* (2015) 234 Cal.App.4th 549, 587-588.)

If the issue were properly before us, we would "reject [appellant's First Amendment] argument because [his] ability to continue to engage in activity that has been determined after a hearing to constitute abuse [under the Domestic Violence Protection Act] is not the type of 'speech' afforded constitutional protection." (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1429.)

*Appellant's Allegedly Nonviolent Conduct*

At oral argument before this court, appellant complained that he is subject to a domestic violence restraining order even though his conduct was nonviolent. Appellant stated, "I can't get a job with a domestic violence restraining order on my record. If they do a background check, it shows up and everybody thinks I'm a violent monster . . . . This isn't domestic violence. It should be a harassment civil suit . . . ."

Except for an incident in Wisconsin, the record contains no evidence of appellant's use or threatened use of physical force against respondent. The incident occurred in June 2013, when appellant was subject to the Tennessee protective order. Respondent declared that appellant had "approached [her], grabbed [her] arm, and turned

6

[her] around to talk to him." Respondent claimed that she has "a documented police report for this incident in Wisconsin."

Respondent declared that she had "significant concerns about [her] well-being and safety" because appellant had "accused [her] of 'destroying' his life" and "he continues to become more and more angry." She was "concerned about what he might try to do to [her] in terms of retaliation, which could include physical harm." Her fear of physical harm is not supported by the evidence.

Nevertheless, there is no basis for appellant's claim at oral argument, "This isn't domestic violence." "Violence," as that word is commonly defined, is not a prerequisite for obtaining relief under the Domestic Violence Prevention Act (hereafter DVPA). The dictionary definition of "violence" is "the exertion of any physical force so as to injure or abuse." (Webster's 3d New Internat. Dict. (1981) p. 2554.) The DVPA, on the other hand, defines "domestic violence" as "abuse." (§ 6211.) "Abuse is not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).) For purposes of the DVPA, "abuse" means, inter alia, "[t]o engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4).) Section 6320, subdivision (a) permits the court to enjoin a party from "harassing . . . or disturbing the peace of the other party . . . ." The trial court issued the DVPA restraining order under these provisions that do not involve violence or the threat of violence.

" '[T]he plain meaning of the phrase "disturbing the peace of the other party" in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party. . . . Therefore, the plain meaning of the phrase "disturbing the peace" in section 6320 may include, as abuse within the meaning of the DVPA, a former husband's alleged conduct in destroying the mental or emotional calm of his former wife . . . .' [Citation.]" (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1146.) "There was substantial evidence presented at trial to support the trial court's finding that [appellant] disturbed the peace of [respondent], an act of 'abuse' under the DVPA." (*Id.*, at p. 1147.)

*Disposition*

The judgment (five-year domestic violence restraining order) is affirmed. Respondent shall recover from appellant her costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:



GILBERT, P. J.



PERREN, J.

Gayle Peron, Commissioner

Superior Court County of San Luis Obispo

_____

James Eugene Campbell, Jr., Propria Persona, for Defendant and Appellant.

Lvovich & Szucsko, Terry A. Szucsko, Hannah R. Salassi, for Plaintiff and Respondent.