Filed 6/18/26  Delaney v. Delaney CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHELLE DOLORES DELANEY, | D085442 |
| Plaintiff and Respondent, | |
| v. | |
| JASON ESAU DELANEY, | (Super. Ct. No. FAMVS2100261) |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino County, Guy A. Bovee, Judge.  Affirmed.

Thomas E. Shinton, for Defendant and Appellant.

Angelique G. Bonanno, for Plaintiff and Respondent.

INTRODUCTION

Jason Esau Delaney appeals from an order renewing a domestic violence restraining order that his former wife obtained against him in 2021 for an additional five-year term.  He contends the evidence does not support the protective order and that the order is unconstitutional, both facially and as applied, because it infringes upon his rights under the Second Amendment to the United States Constitution to keep and bear arms.  He also asserts the order violates his First Amendment rights and deprives him of due process,

and that the court violated his due process right to present impeachment evidence. We reject these contentions and affirm.

## BACKGROUND[1]

Jason and Michelle Dolores Delaney share two children, a daughter and a son, now 13 and 10 years old. In 2017, police arrested Jason after he slapped his daughter on the cheek when she was having a temper tantrum. The incident resulted in a three-year protective order against Jason, which Michelle had terminated early after Jason "pressured her" to dismiss it.

In February 2021, Michelle requested a protective order, claiming that Jason sent messages begging her to reconcile, which she characterized as harassing in both nature and frequency. She further asserted that, although the parties were ordered to communicate exclusively through the Talking Parents website, Jason continued to text her directly. In a supplemental declaration, Michelle stated that Jason's relentless requests to " 'get back together' " caused, among other things, extreme anxiety, sleeplessness, panic attacks, and stomach pain. In early March 2021, the court issued a temporary protective order. After a contested hearing the following month, the court entered a three-year protective order, set to expire on April 2, 2023. The order allowed "brief and peaceful contact" between the parties "as required for court-ordered visitation of [the] children." All nonemergency communications were ordered to occur through the Talking Parents website.

In a November 2021 order addressing Michelle's request concerning custody and parenting time, the trial court found that Jason violated the protective order in May 2021. The court observed that Michelle appeared "mentally exhausted at having to continually rebuff [Jason's] advances." It

---

[1] We deny Michelle's August 14, 2025, motion to augment the record because these documents are either duplicative or not necessary to our resolution of this appeal.

2

further found Michelle to be genuinely afraid of Jason, including a fear he "may snap and hit" their daughter again, and concluded her fear was objectively reasonable. It subsequently awarded Michelle sole legal and physical custody of the children.

In January 2024, Michelle sought to renew the protective order. At the hearing, Jason wanted to call his daughter as a witness based on Michelle's allegation in her renewal request that he had been communicating with the children about their relationship. The court conducted a hearing on the issue and reserved ruling on whether the minor child would be permitted to testify.[2] After hearing the parties' testimony, Jason renewed his request to call the minor child as a witness. Michelle's counsel objected, arguing the door had not been opened for this testimony. Jason's counsel responded that the testimony related to Michelle's sworn pleadings and would bear on her credibility, specifically whether Jason used the children to attempt to reconcile with her.

When Jason's counsel asked if the court would consider the pleadings, the court responded that no such request was before it. The court denied Jason's request to call the child as a witness, concluding that the proposed testimony lacked probative value because the alleged violations of the protective order concerned the Talking Parents messages, and the child's testimony would not assist in determining whether renewal was warranted.

After hearing closing arguments, the court renewed the protective order for an additional five-year term. It found that Jason exceeded the scope of the protective order by failing to limit his Talking Parents communications to child visitation issues. It also determined that Michelle's fear and

---

[2]  The court recited its findings into the record but the reporter's transcript for this hearing is not part of the record on appeal.

3

apprehension were objectively reasonable and some messages sent by Jason were abusive.

DISCUSSION

I.

*Substantial Evidence Supports Renewal of the Protective Order*

Under the Domestic Violence Prevention Act (the Act, Fam. Code,[3] §§ 6200–6460), a court may issue a restraining order upon reasonable proof of "a past act or acts of abuse." (*Id.*, § 6300, subd. (a).) "Abuse is not limited to the actual infliction of physical injury or assault" (*id.*, § 6203, subd. (b)) but includes "any behavior that has been or could be enjoined pursuant to Section 6320" (*id.*, § 6203, subd. (a)(4)). Section 6320, in turn, authorizes orders enjoining one party from, among other things, "disturbing the peace of the other party." (*Id.*, § 6320, subd. (a).) "Disturbing the peace" means "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (*Id.*, subd. (c).) Accordingly, the Act authorizes a protective order based on conduct that disturbs a party's mental or emotional calm.

Although restraining orders under the Act can be renewed and made permanent, they are "subject to termination or modification by further order of the court," either upon stipulation or after a noticed hearing. (§ 6345, subds. (a), (d).) Termination or modification is proper "upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted . . . or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." (Code Civ. Proc., § 533; *Loeffler v. Medina* (2009) 174

---

[3]    Undesignated statutory references are to the Family Code.

Cal.App.4th 1495, 1503–1504 [Code of Civil Procedure section 533 applies to dissolution or modification of restraining orders under the Act].)

Section 6389, subdivision (a), of the Act mandates that a person subject to a protective order, "shall not own, possess, purchase, or receive a firearm or ammunition while that protective order is in effect." (§ 6389, subd. (a).) The prohibition is mandatory, and the trial court has no authority to modify or omit it.[4] (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1294–1295 (*Ritchie*).) When a protected party seeks to extend an existing restraining order, courts have rejected the notion that the party must demonstrate new incidents of abuse. (*Id.* at p. 1284.) Such a rule would be anomalous because it would require proof that the original order was ineffective in deterring the restrained party's conduct as a prerequisite to renewing it. (*Ibid.*) The proper inquiry is whether the protected party continues to harbor a reasonable fear of future abuse. (*Id.* at p. 1290.) A court should grant renewal only upon finding, by a preponderance of the evidence that this apprehension is reasonable. (*Ibid.*) This does not mean the court must conclude future abuse is more probable than not; rather, it is enough that the evidence shows a sufficiently likely risk of future harm to support a sincere and reasonable fear. (*Ibid.*) We review the trial court's order granting or renewing a protective order for abuse of discretion and its factual findings for substantial evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.)

Jason asserts his Talking Parents messages do not meet the statutory threshold for disturbing the peace under subdivision (c) of section 6320. He contends the messages do not justify a "permanent" protective order and courts have reversed protective orders on purportedly stronger evidence,

---

[4]    The only exception is for a firearm "necessary as a condition of continued employment." (§ 6389, subd. (h).)

5

citing *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140 (*Burquet*) for the proposition that "a single Facebook message was deemed insufficient to justify a restraining order due to First Amendment concerns." We disagree with this characterization of *Burquet*. *Burquet* concerned an uninvited in-person encounter at the protected party's residence, coupled with a refusal to leave, which caused fear and supported issuance of the restraining order. (*Id.* at pp. 1142–1143.)

To the extent Jason's opening brief can be construed as arguing the court abused its discretion in renewing the protective order or that the evidence did not support the renewal, the argument lacks merit. As an initial matter, Jason provides little reasoned analysis and cites no authority supporting the proposition that communications must be "excessive, coercive, or controlling" to constitute abuse under the Act. A point asserted without meaningful legal analysis or supporting authority may be treated as forfeited. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 (*Kilrain*).)

In any event, the Act does not impose the requirements Jason proposes. The relevant inquiry is whether, under the totality of the circumstances, his conduct disturbed Michelle's peace by destroying her mental or emotional calm. (§ 6320, subds. (a), (c).) Substantial evidence supports the trial court's finding that it did. The protective order required that all nonemergency communications occur through Talking Parents and limited contact to "brief and peaceful" communications necessary for "court-ordered visitation of [the] children."

While his messages requesting reconciliation with Michelle may have abated at the time she sought renewal of the protective order, they did not stop entirely. The record reflects that Jason repeatedly used the Talking Parents platform to communicate about matters unrelated to visitation

similar to the communications underlying the original issuance of the protective order. His messages accused Michelle of keeping the children from him, asserted her "revenge" was hurting the children, expressed a desire to reunite the family, and blamed her for punishing him and the children.

Rather than acknowledging the impropriety of these communications, Jason testified that although his attempts to reconcile with Michelle were inappropriate, he had never done anything wrong to her. He further testified that he did not view statements accusing Michelle of hurting the children as manipulative and believed "a hundred percent" that he had never violated the protective order, notwithstanding a judicial finding to the contrary. The trial court found this testimony to demonstrate a continuing inability or unwillingness to recognize and respect the boundaries imposed by the order. That finding is reasonable and supported by the evidence.

Michelle testified that after issuance of the restraining order, she took disability leave due to mental or emotional difficulties stemming from Jason's communications. She testified that his repeated statements concerning the children were manipulative and negatively affected her peace of mind. She also remained concerned Jason could become physically aggressive toward her, citing prior conduct involving the children and an incident in which he slammed a door on her father.

Particularly significant was Jason's insistence that he had done nothing wrong and had never violated the protective order. Michelle testified that these statements "frighten[ed]" her because they suggested Jason did not understand the wrongful nature of his conduct and therefore was likely to continue it. She described the prospect of being without a protective order as "very scary" and testified that she could not imagine "what [life] would look like" without its protections. The trial court was entitled to credit this

7

testimony in assessing both whether Jason's conduct disturbed Michelle's peace and whether her continuing fear of future abuse remained reasonable.

Viewed as a whole, the evidence is sufficient to support the trial court's decision to renew the protective order. The issue was not whether any individual Talking Parents message, considered in isolation, was sufficiently offensive or threatening. Rather, the court properly considered the totality of the circumstances, including Jason's repeated disregard of the communication limits imposed by the order, his attempts to inject blame and reconciliation efforts into discussions concerning the children, his refusal to acknowledge wrongdoing, and the effect this conduct had on Michelle's emotional well-being. On this record, the court could reasonably conclude Jason's conduct destroyed the mental or emotional calm of a reasonable person in Michelle's position and that her continued fear of future abuse remained objectively reasonable. Accordingly, it did not abuse its discretion in renewing the protective order.[5]

---

[5] In the trial court, Jason claimed Michelle had engaged in improper judicial forum shopping because her request to renew the order should have been presented to the judge presiding over the dissolution action. In his opening brief, when discussing the evidence presented, he stated Michelle "forum shopped [the] [protective order]" but presented no analysis or authority to support this statement. Jason forfeited his forum shopping contention by not presenting it in his opening brief under a separate heading or subheading and by failing to support it with analysis and citation to authority. (*Kilrain, supra*, 96 Cal.App.5th at p. 620; Cal. Rules of Court, rule 8.204(a)(1) ["Each brief must: [¶] . . . [¶] (B) State each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority; and [¶] (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."].)

II.

*The Facial and As-Applied Challenges to Section 6345 Fails*

Relying on *United States v. Rahimi* (2024) 602 U.S. 680 (*Rahimi*), Jason contends *section 6345* is facially unconstitutional and as applied to him because it imposes a permanent firearm ban in violation of his Second Amendment rights. Consequently, he argues that we must reverse the entire renewed protective order, not just the firearm restriction. This argument fails for the simple reason that section 6345 does not itself impose any firearm restriction.

"[T]he Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." (*N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. 1, 17.) The Second Amendment "right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.' " (*Rahimi, supra*, 602 U.S. at p. 690.) " 'Like most rights', though, 'the right secured by the Second Amendment is not unlimited.' " (*Ibid.*) If "the Second Amendment's plain text covers an individual's conduct" then "the Constitution presumptively protects that conduct." (*Bruen,* at p. 24.) "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " (*Ibid.*)

In *Rahimi, supra*, 602 U.S. 680, the United States Supreme Court upheld a federal statute—18 U.S.C. § 922(g)(8)[6]—prohibiting possession of

---

[6]      18 U.S.C. § 922(g)(8) provides:  "It shall be unlawful for any person– . . . [¶]  (8) who is subject to a court order that– [¶] (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; [¶] (B) restrains such person from

firearms by persons subject to domestic violence restraining orders "if that order includes a finding that [the person to be restrained] 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." (*Id.* at p. 685.) The court reviewed the history of disarmament and firearm regulation under English and early American law and concluded that historical firearm regulations "confirm[ed] what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." (*Id.* at pp. 693–697, 698.) Thus, the constitutional justification for disarmament rests on dangerousness, not merely the existence of a restraining order.

Constitutional challenges to statutes are reviewed de novo. (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474.) Review begins with a strong presumption of constitutionality, and all doubts are resolved in favor of validity. (*Beach & Bluff Conservancy v. City of Solana Beach* (2018) 28 Cal.App.5th 244, 264.) Absent a clear and unmistakable conflict with the state or federal Constitution, the statute must be upheld. (*Ibid.*)

We first address Jason's facial challenge to section 6345. Facial challenges are generally disfavored because assertions of facial invalidity frequently rely on conjecture, creating a risk of premature statutory interpretation based on sparse factual records. (*Wash. State Grange v. Wash. State Republican Party* (2008) 552 U.S. 442, 450.) Such challenges also

---

harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or [¶] (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or . . . ."

conflict with principles of judicial restraint, which cautions against resolving constitutional questions unnecessarily or announcing rules broader than the case requires. (*Ibid.*) The threshold for mounting a facial constitutional challenge is exacting. (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1138.) It is the most difficult form of constitutional challenge to sustain, requiring a showing that the statute is invalid in every conceivable application. (*Rahimi, supra*, 602 U.S. at p. 693.) The claims fails if the statute is constitutional in even a single set of applications. (*Ibid.*)

Section 6345 governs the duration, modification, and termination of domestic violence restraining orders. An initial protective order may not exceed five years and remains subject to termination or modification by further court order. (§ 6345, subd. (a).) The statute authorizes renewal of a protective order "either for five or more years, or *permanently*, at the discretion of the court, without a showing of further abuse since the issuance of the original order." (§ 6345, subd. (a), italics added.) It also permits the restrained party to seek termination or modification of the order at any time prior to its expiration. (§ 6345, subd. (d).)

Jason contends section 6345 is facially unconstitutional because renewal of a protective order will result in the continued application of the firearm prohibition. That argument attacks the wrong statute. Section 6345 does not prohibit anyone from owning or possessing firearms. It merely governs the duration and renewal of protective orders. The statute that restricts firearm possession is section 6389.[7]

---

[7]    Section 6389, subdivision (a) provides: "A person subject to a protective order, as defined in Section 6218, shall not own, possess, purchase, or receive a firearm while that protective order is in effect." Section 6218 defines a protective order as one enjoining, among other things, specific acts of abuse.

11

But Jason does not challenge section 6389, much less argue it is facially unconstitutional. In his 62-page opening appellate brief, Jason mentions section 6389 only once. And he never develops any constitutional challenge to this statute. Although his reply brief asserts that sections 6345 and 6389 operate "in conjunction," he still does not contend that section 6389 itself violates the Second Amendment. We are not required to nor will we construct that argument for him. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 679, fn. 8.)

Jason's as-applied challenge to section 6345 fails for the same reason. He argues section 6345 is unconstitutional as applied to him because a court may renew a protective order permanently and, as a consequence, section 6389 would continue to prohibit him from ever owning, possessing, purchasing, or receiving a firearm or ammunition.[8] This argument conflates two distinct statutes. As already mentioned, section 6345 governs the

---

The firearm prohibition is mandatory. (*Ritchie, supra*, 115 Cal.App.4th at pp. 1294–1295.)

[8] This section of the opening brief also lacks meaningful citation to relevant authority. Although our independent research revealed a substantial body of case law addressing as applied constitutional challenges in analogous contexts, none of this authority is cited or discussed. Counsel's citation to *Wis. v. Yoder* (1972) 406 U.S. 205 and *Brown v. Plata* (2011) 563 U.S. 493 as examples of successful as applied challenges is misplaced because neither case supports that proposition. *Yoder* addresses a Free Exercise Clause exemption from compulsory education laws, not an as-applied constitutional challenge in the sense advanced here. (*Yoder*, at p. 207.) *Plata* concerns systemic Eighth Amendment violations arising from prison overcrowding; it does not analyze or apply the as-applied challenge framework. (*Plata,* at pp. 499–500.) Because the issue involves a constitutional question subject to de novo review, we disregard the mischaracterized authorities and resolve Jason's as applied challenge under the correct legal framework.

duration, renewal, modification, and termination of protective orders; it does not itself prohibit firearm possession. Any restriction on Jason's ability to possess firearms arises from section 6389, which imposes a firearm restriction while a qualifying protective order remains in effect. But he does not challenge section 6389.

Nor does *Rahimi* support Jason's position. *Rahimi* addressed the constitutionality of a firearm restriction imposed on individuals found to pose a credible threat to the physical safety of others. (*Rahimi, supra*, 602 U.S. at pp. 685, 690.) It did not hold that protective orders may not be renewed, nor did it suggest that statutes authorizing renewal of protective orders are unconstitutional. At most, *Rahimi* may bear on the circumstances under which a firearm prohibition may constitutionally be enforced. It does not render section 6345 unconstitutional as applied to him.

For these reasons, we reject Jason's constitutional challenges to section 6345.

## III.

### *No Due Process Violation from Excluding Impeachment Witness*

On appeal, Jason reprises his trial-level argument that his daughter's testimony was relevant to impeach statements Michelle made in her pleadings. He claims that excluding his daughter's testimony undermined his defense. Other than citing five U.S. Supreme Court opinions for general propositions, he provides no meaningful, factually analogous authority supporting reversal.

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence bearing on a witness's credibility may

be used to impeach their testimony regarding a material fact in the case. (Evid. Code, §§ 780, subd. (i), 1101, subd. (c).) "As with all relevant evidence, however, the trial court retains discretion to admit or exclude evidence offered for impeachment." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.)

A trial court's authority to admit or exclude impeachment evidence is necessarily expansive, given the wide range of factual circumstances in which such issues arise, and its exercise of that discretion is ordinarily upheld on appeal. (*People v. Clark* (2011) 52 Cal.4th 856, 932.) To obtain reversal, a party must show that this discretion was exercised in an arbitrary, capricious, or patently absurd manner that produced a manifest miscarriage of justice. (*People v. Rodriguez, supra*, 20 Cal.4th at pp. 9–10.)

Jason fails to meet this demanding standard. While he correctly notes Michelle stated in her sworn declaration that he was "using our children to try [to] get me back and his [*sic*] manipulating them." He ignores, however, that Michelle made this statement after listing Jason's Talking Parents messages where Jason stated:

> " 'Why would it be so wrong if I was still with you and our kids they obviously miss me and you like crazy when there [*sic*] not with us.

> "[¶] . . . [¶]

> " 'I want one of these days I can make a nice dinner and we can watch a movie night with our kids or lunch and you can watch them play outside with me. [Son] is on two wheels now and [daughter] is off to the races with whatever she wants to ride. I'm trying to make this easy for you. There's no reason we can't be figuring this out. [daughter] says your [*sic*] gunna say no but she says try anyways I wish you would figure this out.

14

"If you want to bring them over [daughter's] friend keeps coming over asking to play with [daughter] before it gets too late. You can come watch them outside with me if you would like.' "

Michelle's declaration includes limited hearsay statements attributed to the children.[9] Significantly, however, at the hearing on the request to renew the protective order, the focus remained on Jason's own communications—particularly the Talking Parents messages—rather than on any hearsay statements attributed to the children. In this context, the marginal impeachment value of the proposed testimony was limited at best. The trial court could reasonably conclude that calling a minor child to testify about collateral matters—primarily to challenge statements already supported by Jason's own messages—would add little, if anything, to the evidentiary record.

Under these circumstances, Jason has not demonstrated that the trial court's ruling exceeded the bounds of reason or resulted in a miscarriage of justice. This conclusion is reinforced by the ages of the children. Requiring children of such young ages to testify, particularly in a contentious parental dispute, carries an inherent risk of emotional harm and undue stress. The trial court was entitled to weigh those considerations against the limited

---

[9]    Specifically, Michelle stated: "Our daughter comes home telling me Daddy wants to know if I have a boyfriend. She says Daddy wants to be my boyfriend. I have to respond to our daughter, . . . that I do not feel that Daddy is a horrible person. [Daughter] also asked me, "What happened in Court?" She also stated: "The children still ask me when Daddy and I will be getting back together. He told our son, 'When we win in Court, I will get to see you everyday.' I then have to discuss with our son, . . . why he does not see Daddy every day without talking about this case."

15

probative value of the proposed testimony, which was directed at collateral impeachment rather than a central disputed issue. On this record, the court acted well within its discretion in declining to compel the children's testimony.

## IV.

*The First Amendment and Due Process Challenges Fail*

Jason asserts "the permanent [protective order] infringes on [his] First Amendment rights." (Capitalization omitted.) This section is devoid of meaningful legal authority. It relies solely on a passing reference to *Burquet, supra,* 223 Cal.App.4th 1140, purporting to suggest the Legislature was concerned about chilling protected speech, but provides no pinpoint citation or developed analysis.

In any event, the argument fails. The trial court found that Jason's messages exceeded the scope of the existing restraining order, constituted abusive conduct, and Michelle's fear and apprehension were objectively reasonable. Moreover, "[a] statute that is otherwise valid, and is not aimed at protected expression, does not conflict with the First Amendment simply because the statute can be violated by the use of spoken words or other expressive activity." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 134, disapproved on other grounds by *Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 631, fn. 6.)

He also claims, "the permanent [protective order] violates due process by triggering federal firearm restrictions without adequate basis." (Capitalization omitted.) Counsel argues: "The trial court's reliance on 'disturbing the peace' alone, untethered from any credible threat, fails to satisfy the due process requirement of a rational nexus between the restriction and a legitimate state interest." The only authority cited in this

section is *Rahimi, supra*, 602 U.S. 680 which involves an as applied challenge and expressly declines to address due process concerns because no such claim was presented.  (*Id.* at p. 701, fn. 2.)  Due process requires fair notice and an opportunity to be heard.  (See, e.g., *Mathews v. Eldridge* (1976) 424 U.S. 319, 348.)  Here, Jason had notice of the renewal proceeding and a meaningful opportunity to be heard.  Moreover, he did not claim a violation of due process in the trial court and forfeited any due process claim.

DISPOSITION

The order is affirmed.  Respondent is entitled to costs on appeal.


DO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


KELETY, J.