Filed 9/2/20  Ortega v. Gonzalez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EMERITA MARILU CHINCHILLA ORTEGA, | B297853 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18CHRO01985) |
| v. | |
| AIROL RICARDO MUNOZ GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court for the County of Los Angeles, Thomas Trent Lewis, Judge.  Affirmed.

Airol Ricardo Munoz Munoz, in pro. per., for Defendant and Appellant.

Emerita Marilu Chinchilla Ortega, in pro. per., for Plaintiff and Respondent.

————————————————

The trial court granted Emerita Marilu Chinchilla Ortega's request for a restraining order against Airol Ricardo Munoz Gonzalez (Munoz)[1] pursuant to the Domestic Violence Prevention Act, Family Code section 6200 et seq. (DVPA).[2] On appeal Munoz contends the trial court abused its discretion in issuing the order. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Request for Domestic Violence Restraining Order*

On November 26, 2018 Ortega, representing herself, filed a form request for a restraining order under the DVPA against Munoz, whom she identified as someone she used to date and the father of her then-16-year-old daughter.[3] Although Ortega resided in California, Munoz lived in Florida. On the DVPA form Ortega indicated she and Munoz had been involved in another court case filed that same year concerning child support. Ortega checked boxes on the form requesting personal conduct orders against Munoz, as well as a stay-away order requiring him to stay at least 100 yards away from Ortega and from various places including her home and vehicle. Specifically, with regard to the personal conduct orders, she checked box 6(a), which requested the court order Munoz to refrain from certain actions against her,

---

[1] Documents in the record and appellate briefing show Airol Ricardo Munoz Gonzalez is also sometimes referred to as Airol Munoz.

[2] Statutory references are to this code unless otherwise stated.

[3] Ortega and Munoz's daughter turned 18 years of age while this appeal has been pending.

including that he not "[h]arass, attack, strike, threaten, . . . [or] disturb the peace." She also checked box 6(b), which would bar Munoz from contacting her directly or indirectly.

Ortega's papers filed in support of her request, which incorporated a declaration under penalty of perjury that the information she provided was true and correct, included an attached statement providing additional details. In that attachment Ortega stated Munoz had called her twice on her personal cell phone on July 13, 2018 but she did not answer the first call because, pursuant to a court order, they were only to communicate regarding their daughter through messages using Talking Parents.[4] Concerned there was an emergency involving her daughter, Ortega answered Munoz's second call. According to Ortega, Munoz screamed on the telephone, "It's your fault!" and "It's because of the [c]hild [s]upport!" He also threatened, "If you don't drop the child support, you'll regret it." Afraid, Ortega hung up the telephone. On October 21, 2018 Munoz sent her a message through Talking Parents. In addition to ranting and insulting Ortega with various derogatory statements and names, Munoz threatened he would "send [Ortega] back to [her] country." He continued to send Ortega one message a day over the next five days with additional insults.

In her attached statement Ortega further explained Munoz had been verbally abusive for 15 years and referred to her in various pejorative terms, including the Spanish equivalent of "[d]aughter of a [b]itch," when angry. He threatened "he would

---

[4] Talking Parents is an online co-parenting communication tool. (See *Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 364.)

3

throw [her] in the ocean if [they] were in Cuba." In the past she had filed a police report because he had vandalized her vehicle. Since 2016 Munoz had continually harassed her through text messages, telephone calls and Talking Parent messages approximately once a week claiming he no longer owed child support.

2. *The Hearings on Ortega's Domestic Violence Restraining Order Request*

a. *The December 18, 2018 hearing*

On December 18, 2018 the case was called before Commissioner Susan K. Weiss. Ortega appeared in person, and Munoz appeared by telephone from his home in Florida. Summarizing the procedural history, the court explained another judicial officer had already granted the restraining order on a temporary basis and the purpose of the hearing was to determine whether there was still a need for the order and to hear from the parties. After the court swore Munoz and Ortega in as witnesses, Munoz, in response to the court's inquiry, stated their daughter was living with him in Florida. Ortega, aided by a Spanish language interpreter, testified she and Munoz had been separated from the time their daughter was born. Stating there was a court order issued in California governing custody and visitation, Ortega handed the court a copy of an order (titled "Findings and Order After Hearing") filed July 5, 2018 in another case. The order provided for joint legal custody of the parties' daughter, with Ortega having care of the child until June 2018 and Munoz having care of the child thereafter, with certain exceptions, such as for winter, spring and summer breaks. The order included a requirement Ortega and Munoz utilize an online

4

parenting communication tool, such as Talking Parents, to communicate.

When asked by the court why she felt the need for a restraining order, Ortega testified she was afraid Munoz would kill her because she was suing him for $90,000 in unpaid child support. She explained Munoz had recently become a citizen but, due to his child support debt, had been denied a passport and a license had been cancelled. She stated Munoz blamed her, claiming it was her fault he did not have a license, passport or credit cards. She testified Munoz in 2006 had told her he wished she were in Cuba so he could "just throw [her] into the sea, and he would be able to get rid of the things he owes." She stated that in 2010 he had grabbed her by her shoulders, shaken her and demanded she get rid of her child support lawsuit. At that time he had also threatened to put drugs in her vehicle, call the police and tell them she had drugs in her car. Munoz frightened her; every morning since then she checked her entire house and inspected her car. She further testified Munoz has verbally abused her, such as saying she was disgusting and had "like shit on [her] face," and has subjected her to false accusations, such as claiming she was an accessory to murders and torture. She stated she felt emotionally abused and could not sleep because, when the telephone rang, she knew it was Munoz trying to contact her to say terrible things. Although Munoz lived in Florida, Ortega stated she had reason to believe he would show up at her doorstep because he often came to California. She testified she was afraid of him for the additional reason he had twice been arrested for domestic violence against another woman with whom he had two other daughters and there was a

restraining order in effect barring him from going near that other woman.

After Ortega testified, Munoz told the court he could not appear in person "because the time [was] not perfect" and requested a continuance. He stated he had planned to be in court in California on January 14, 2019 for a hearing in the parties' child support case. Ortega stated she wished to present to the court the messages Munoz sent her through Talking Parents. The court continued the matter to January 15, 2019 after both parties agreed to that date.

### b. *The January 15, 2019 hearing*

On January 15, 2019 the parties appeared before Judge David A. Rosen. Ortega, aided by an interpreter, and Munoz both advised the court they wished to provide further evidence. Ortega informed the court she wanted to submit "certain texts" that would allow it to "see the way he refers to me and the way he treats me." In response to the trial court's question whether she had shown to Munoz the texts she wished to present to it, she replied, "Yes." After receiving both parties' time estimates for the hearing, the court determined the matter would have to be continued to another date. Munoz requested a date in April and stated he preferred April 22, 2019. The court continued the hearing to that date.

### c. *The April 22, 2019 hearing*

On April 22, 2019 the case came before Judge Thomas Trent Lewis. Ortega again appeared in person with the assistance of a Spanish language interpreter, and Munoz made a telephonic appearance. When asked by the court why he was not present in person, Munoz claimed to have several reasons, but

6

informed the court he nevertheless wished to proceed telephonically rather than accepting the trial court's offer to continue the hearing to another date.

Munoz told the court he had not filed a written opposition to Ortega's request for a restraining order but opposed the request. When asked by the trial court why, Munoz replied, "[T]here is no cause for . . . her to accuse me of anything because I never did anything to her to . . . provoke this situation." He contended Ortega made false accusations against him in her DVPA request in retaliation for his having been granted physical custody of their daughter as of the previous summer after a court had found Ortega abused their daughter.[5] Referring to Ortega's papers filed in support of her request, the court asked Munoz whether, as Ortega had stated in those papers, he and Ortega communicated through Talking Parents. Munoz told the court the last communication they had with each other through Talking Parents was perhaps October of the previous year. He denied telling Ortega, who he testified was from Guatemala, in October 2018 that he was going to have her sent back to her country. He also denied "us[ing] any bad words to describe her or call[ing] her bad names." He admitted he used to live in Cuba but denied telling Ortega he would throw her in the ocean if he were in Cuba. Munoz claimed their daughter had been conceived as a result of his having been raped by Ortega. He stated he lived in Florida but had lived in California until 2012.

---

[5]     Other than his own testimony, Munoz presented no evidence a court had found Ortega had abused their daughter. The July 5, 2018 Findings and Order After Hearing, which awarded joint legal custody to Ortega and Munoz, does not include, and makes no reference to, any such finding.

At the court's request Ortega provided a copy of Munoz's relevant Talking Parents communications, which the court observed were in Spanish. The court asked Ortega whether Munoz threatened to send her back to Guatemala in his Talking Parents messages or orally. She responded he told her that over the telephone on July 13. She also stated he told her, "If you don't drop the child support, you'll regret it," during the telephone call on July 13, 2018. When asked by the court what Munoz wrote in his Talking Parents messages that made her fearful, she replied Munoz's false accusations, such as his falsely accusing her of being a rapist and an accessory to assassins, made her afraid. The court responded, "Well, harsh words alone, calling you a rapist, is not domestic violence. That may be false accusations, but I don't see you . . . being in imminent fear of immediate bodily injury or that he is precluded from calling you bad words. I'm not endorsing that way of communicating, but we still have a First Amendment in the United States that allows people to say things sometimes that are unkind."

Ortega testified their daughter, who at the time of the hearing was 17 years old, had been living with Munoz for 10 months but insisted the child did not want to live with Munoz because he was a violent person. She repeated her previous testimony Munoz had threatened to place drugs under her car and then call the police and clarified Munoz's threat was made orally. She also stated, "In 2010 he dragged me by the shoulders and he shook me when he asked me to withdraw my lawsuit for child support and I said no. The problem is that debt—the child support debt—he blames me for not having a license, credit or passport, and he says that it's all my fault." She told the court she sought a restraining order because she was in fear for her

life.  She testified Munoz was a very violent person, stated Munoz had been arrested in 2005 in California and in 2006 in Florida, and clarified the California arrest was for domestic violence.

Upon being asked by the court whether he had "been contacted . . . by child support services concerning back child support," Munoz replied in the affirmative.  He stated that he had appeared in court the previous week because "Florida enforce[s] the child support in California" and that he did not pay child support for his daughter; however, he denied telling Ortega words to the effect "that she should drop the child support" or otherwise threatening her.  He also later admitted Ortega's claim for unpaid child support was in the amount of $90,000 (including interest), but then stated he never missed a payment except when he was sick.  He clarified he did miss some payments because "some weeks for some reason I can't work, and then the payment doesn't go to California."  He denied ever telling Ortega he did not have to pay her child support.  He told the court he never threatened Ortega "with anything physical or anything."  Although he admitted he had previously been arrested for domestic violence, Munoz told the court the charges had been dropped.  The court declined Ortega's offer to provide further proof of Munoz's prior arrests for domestic violence because of Munoz's testimony that, although he had been arrested, he had not been charged.

After the parties testified, the court stated, "As between the two parties, the court finds that the testimony of [Ortega] is credible; the testimony of [Munoz] is not credible.  The court does believe the testimony of [Ortega] that [Munoz] did make threatening remarks towards her and to her. . . .  I do believe that [Munoz] has made threats concerning enforcement of the child

support.  I do believe that [Munoz] has made threats concerning that she drop the action.  I do believe that [Munoz] has threatened the mother's immigration status."  It clarified, "I'm not granting the restraining order based on the use of bad words, calling her curse names or things of that nature."

That same day the court signed a restraining order for three years.  Among other matters the restraining order included the personal conduct orders requested by Ortega and a stay-away order, subject to specified exceptions.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

The DVPA authorizes issuance of a restraining order to prevent acts of domestic violence and abuse and to ensure a period of separation of the persons involved "if an affidavit or testimony . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse."  (§§ 6220, 6300.)  For purposes of the DVPA, "domestic violence" is defined as abuse perpetrated against specified persons, including a "person with whom the respondent has had a child" (§ 6211, subd. (d)); and "abuse" includes engaging in "any behavior that has been or could be enjoined pursuant to Section 6320" (§ 6203, subd. (a)(4)). Section 6320 authorizes the court to "issue an ex parte order enjoining a party from" a variety of conduct, including "attacking, striking, stalking, threatening, . . . harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, . . . contacting, either directly or indirectly, . . . coming within a specified distance of, or disturbing the peace of the other party, and, . . . other named family or household members."  (*Id.*, subd. (a).)

10

A grant or denial of injunctive relief is generally reviewed for abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850.) This standard applies to a grant or denial of a restraining order under the DVPA. (See, e.g., *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143 (*Burquet*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted; accord, *In re Butler* (2018) 4 Cal.5th 728, 738-739.) In reviewing the trial court's factual findings for substantial evidence, "'"[w]e must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment."'" (*Burquet*, at p. 1143; accord, *In re Marriage of Fregoso & Hernandez*, at p. 702.) "We do not determine credibility or reweigh the evidence. [Citation.] If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding." (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12; see *In re Marriage of Martindale & Ochoa* (2018) 30 Cal.App.5th 54, 61 ["we are required to defer to the [trial] court's credibility determinations and make all reasonable inferences in support of the court's findings"]; see also *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339 ["'"[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court"'"].)

## 2. *The Trial Court Did Not Abuse Its Discretion in Issuing the Restraining Order*

Munoz contends the trial court abused its discretion in issuing a restraining order because there was insufficient evidence to support a finding of domestic violence—that is, of any conduct that could be enjoined under section 6320. Specifically, Munoz argues there was no evidence he threatened Ortega. Even if there were, he asserts, no such threat constituted domestic violence because Ortega was not threatened with physical violence and was not injured by him; there was no evidence the threats alleged by Ortega, involving one telephone call from Florida to California, caused Ortega any fear or otherwise disturbed her peace; and the evidence, including Ortega's own testimony, shows any disturbance of Ortega's peace or calm was caused by his nonactionable accusations, such as calling her a rapist and a criminal, and his winning custody of their daughter, not by the threats alleged by Ortega and relied upon by the court for its decision.

Contrary to Munoz's arguments, substantial evidence supported the trial court's findings Munoz had threatened Ortega. As discussed, Ortega testified Munoz threatened her to make her cease attempts to enforce his child support obligations, including his warning her during their telephone conversation on July 13, 2018, "If you don't drop the child support, you'll regret it" and his threatening to send her back to Guatemala. Ortega also testified regarding Munoz's earlier threats, as well as his past physical abuse—dragging her by the shoulders and shaking her—in his efforts to have her drop the child support action. Ortega in her papers filed in support of the request for a restraining order, which she signed under penalty of perjury, also stated Munoz

12

threatened her regarding dropping her child support action and "send[ing] [her] back to [her] country."[6]  Although Munoz on appeal challenges the credibility of Ortega's testimony, pointing out the July 13, 2018 telephone conversation occurred only eight days after the Findings and Order After Hearing, which did not address child support, Munoz's motivation to threaten Ortega about child support is nevertheless shown by his own testimony that Ortega asserted a claim for $90,000 (including interest) in unpaid child support and his admission that he had missed some payments.  Ortega also stated in her papers that, since 2016, Munoz continually sent her harassing text messages, telephone calls and Talking Parent messages approximately once a week claiming he no longer owed child support.  (Evid. Code, § 411 ["[e]xcept where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"]; *In re Marriage of Fregoso & Hernandez, supra,* 5 Cal.App.5th at p. 703 ["[t]he testimony of one witness, even that of a party, may constitute substantial evidence"].)

Munoz contends this evidence is insufficient, asserting Ortega must show not merely that he threatened her but also that his threats entailed some level of violence, such as that he threatened her with physical injury.  He explains his past domestic violence arrests do not constitute evidence of such

---

[6]     Family Code section 6300 provides an exception to the hearsay rule by allowing a court to issue a restraining order under the DVPA based on evidence provided by affidavit. (See Fam. Code, § 6300, subd. (a); see also Code Civ. Proc., § 2015.5 [authorizing written statement under penalty of perjury in lieu of affidavit].)

violence because they did not involve Ortega and he was never charged with a crime. Munoz, however, failed to cite legal authority supporting his argument the alleged abusive conduct must entail physical violence to constitute domestic violence within the meaning of the DVPA. (See Cal. Rules of Court, rule 8.204(a)(1)(B); *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["[w]hen legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"]; *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 [appellate court may treat as forfeited any argument not "supported by both coherent argument and pertinent legal authority"].) Moreover, the argument lacks merit. As discussed, domestic violence is defined under the DVPA as abuse, which includes threatening the other party and any other behavior that could be enjoined pursuant to section 6320. The DVPA does not require the alleged abuse to entail physical injury or violence. (See §§ 6203, subd. (b) ["[a]buse is not limited to the actual infliction of physical injury or assault"], 6320; see also *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1496 ["section 6320 lists several types of nonviolent conduct that may constitute abuse within the meaning of the DVPA"]; accord, *Jason P. v. Danielle S.* (2017) 9 Cal.App.5th 1000, 1016, fn. 13; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1425 [defendant's conduct in "disclosing or threatening to disclose to third parties for no particular reason intimate details" falls within scope of section 6320].)[7]

---

[7] In any event, Ortega stated Munoz had in the past told her he "would throw [her] in the ocean" if they were in Cuba, where Munoz used to live. She also testified Munoz, when seeking to

14

Munoz also failed on appeal to provide legal authority supporting his argument that, to establish domestic violence for purposes of the DVPA, Ortega was required separately to show Munoz's threats caused her fear or otherwise disturbed her peace. Munoz's reliance on *Burquet*, *supra*, 223 Cal.App.4th 1140, in support of this argument is misplaced. In *Burquet* the trial court had granted a restraining order under the DVPA based on an express finding the defendant violated that portion of section 6320 referring to disturbing the peace of the party seeking the order, not the portion referring to threatening conduct. Division Five of this court affirmed, holding there was substantial evidence supporting the trial court's decision "that defendant, because of his inability to accept that his romantic relationship with plaintiff was over, and despite plaintiff's numerous requests that he not contact her, was engaging in a course of conduct of contacting plaintiff by phone, e-mail, and text, which messages contained inappropriate sexual innuendos, and arriving at her residence unannounced and uninvited, and then refusing to leave and making a scene," the "result of which actions by defendant 'disturb[ed] the peace of the other party.'"

---

have Ortega drop her child support lawsuit, had on a prior occasion dragged her by the shoulders and shaken her. Although Munoz contends only evidence of recent occurrences may be considered by the court in making a factual finding of domestic violence, and argues evidence of those past events should be disregarded, he again failed to provide any legal authority supporting this contention and thus to establish any error by the trial court. (Cf. *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 397 [in considering whether to renew a domestic violence restraining order, "[t]he key consideration for the court is not the . . . timing of abuse"].)

15

(*Burquet*, at p. 1144.) Nothing in that decision suggests a party seeking a DVPA restraining order must always prove her or his peace was destroyed before a court may find domestic violence under the DVPA.

In any event, Munoz is mistaken when he contends there was no evidence his threatening Ortega caused Ortega to be afraid or otherwise upset her calm.[8] Although Ortega testified Munoz's accusations in his Talking Parents messages that she was a criminal made her afraid, she did not say his threats (which she testified Munoz communicated by telephone, including in the July 13, 2018 telephone call) did not also induce fear or otherwise disturb her peace. To the contrary, Ortega introduced substantial evidence showing from which it may reasonably be inferred she was afraid of him because of his threats.[9] Indeed, in her declaration in support of her request for a restraining order,

---

[8] For purposes of the DVPA, disturbing the peace includes destroying the mental or emotional calm of the other party. (*Curcio v. Pels*, *supra*, 47 Cal.App.5th at p. 12; *Burquet*, *supra*, 223 Cal.App.4th at pp. 1146-1147.)

[9] Although the trial court at the April 22, 2019 hearing stated it did not "see [Ortega] . . . being in imminent fear of immediate bodily injury," it is clear from the context of the trial court's statement it was referring at the time to Ortega's reaction to Munoz's insults and accusations, such as calling her a rapist, and not to his threats. The trial court expressly found Ortega's testimony regarding Munoz's threats credible. Moreover, because Munoz did not object to any omission of, or ambiguity regarding, any finding by the trial court, including any finding by the court of Ortega's reaction to Munoz's threats, we apply the doctrine of implied findings. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

after explaining Munoz had threatened her on the telephone on July 13, 2018, she stated she hung up in part "[d]ue to fear."

Munoz also challenges the trial court's order on the ground the Talking Parents communications Ortega presented contained exculpatory evidence the court did not consider because it was in Spanish. He asserts those communications show Ortega, in her 31 messages to him between July 13, 2018 and October 26, 2018, never suggested he had ever threatened her. However, because he neither made this argument nor sought to introduce such evidence in the trial court, he cannot now do so on appeal. (See, e.g., *People v. Seumanu* (2015) 61 Cal.4th 1293, 1318-1319 [failure to raise argument in trial court results in forfeiture on appeal]; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226 ["CalFarm failed to raise this argument in the trial court and thus forfeits that argument here"].)

Munoz's contention on appeal he was unable to view the Talking Parents messages because he appeared at the hearing by telephone and thus could not argue in the trial court they contained exculpatory evidence does not compel a contrary result. Munoz points to nothing in the record suggesting he did not have access to copies of his communications with Ortega prior to the April 22, 2019 hearing. In any event, Munoz did not disagree with Ortega's statement to the court that she had shown Munoz the communications she sought to introduce; and he did not object in the trial court that he had been unable to view them. (*Doers v. Golden Gate Bridge Etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 ["'[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been but was not presented to the lower court by some

appropriate method'"]; see *In re Carrie W.* (2003) 110 Cal.App.4th 746, 755 [same].)  Moreover, because the record contains no English translation of the communications, Munoz has not supplied a record adequate to assess his contention the communications contained exculpatory evidence and thus to permit meaningful review of the issue.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["""if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed"""]; *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 ["[f]ailure to provide an adequate record on an issue requires that the issue be resolved against appellant"].)

Munoz challenges the trial court's finding he threatened Ortega's immigration status, contending Ortega at the hearing on April 22, 2019 testified his alleged threat to send her back to her country occurred during the July 13, 2018 telephone call while her written statement in support of her request asserted it was made in an October 21, 2018 Talking Parents message.  Munoz fails to explain the significance of this purported discrepancy, which at most goes to the trial court's assessment of Ortega's credibility, an issue we do not review.

## DISPOSITION

The trial court's order is affirmed.  Ortega is to recover her costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.                    FEUER, J.

18