Filed 10/16/20  Bentley v. Mitiku CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| RODERIC M. BENTLEY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TEKLE MITIKU,<br><br>    Defendant and Appellant. | D075297<br><br><br><br>(Super. Ct. No. 37-2017-00036099-CU-HR-CTL) |
| TEKLE MITIKU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SHANDLE BENTLEY,<br><br>    Defendant and Respondent. | D075860<br><br><br><br>(Super. Ct. No. 37-2018-00060200-CU-HR-CTL) |

APPEALS from orders of the Superior Court of San Diego County, Frederick A. Mandabach, Judge (retired judge of the San Bernardino Superior Court, assigned by the Chief Justice (art VI., § 6 of the Cal. Const.)). Affirmed.

Tekle Mitiku, in pro. per., for Defendant and Appellant; Plaintiff and Appellant.

No appearance by Plaintiff and Respondent, Roderic M. Bentley.

No appearance by Defendant and Respondent, Shandle Bentley.

Roderic Bentley (Roderic) and Tekle Mitiku are neighbors who filed cross-petitions for civil harassment restraining orders. (Code Civ. Proc., § 527.6.)[1]

Roderic filed a petition against Mitiku, and the court found he proved his claims, and entered a five-year protective and stay-away order.

Mitiku filed several petitions against Roderic and his family members. Mitiku's petition at issue here is his November 2018 petition against Roderic's adult son, Shandle Bentley (Shandle). The court found Mitiku did not prove his claims, and denied his request for a restraining order.

Mitiku (who represents himself on appeal) filed separate appeals from the two orders. We consolidated those appeals. Although neither Roderic nor Shandle filed a respondent's brief, Mitiku retains the burden to show trial court error. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1141, fn. 1 (*Burquet*).)

After reviewing Mitiku's appellate briefs and the record, we affirm both orders. In his briefs, Mitiku discusses his version of the facts about his disputes with the Bentley family. However, an appeal is not a second trial. We are bound by the trial court's factual findings if they are supported by substantial evidence. We conclude the record supports the court's factual findings. We therefore determine Mitiku has not met his burden to show a ground for reversing the court's orders.

---

[1] Further statutory references are to the Code of Civil Procedure.

2

## FACTUAL AND PROCEDURAL SUMMARY

### Petitions and Earlier Hearings

On September 28, 2017, Roderic petitioned for a civil harassment restraining order against Mitiku.[2] Roderic identified himself, his wife, an adult son (Shandle), and his grandson as persons needing protection. He claimed Mitiku verbally harassed his family "every time we come outside," including saying he "wishes we would die" and threatening to "kill" Roderic's son. He also alleged that Mitiku attempted to hit Roderic's granddaughter with his car. Roderic said the harassment has occurred "for over 2 years." The court granted Roderic a temporary restraining order (TRO) against Mitiku, including a stay-away order.

A few days later, Mitiku filed an opposition to the petition, denying each of Roderic's allegations. About one week later, Mitiku petitioned for his own civil harassment restraining order on behalf of himself and family members, and against Roderic, his wife, and his son Shandle. He claimed Roderic and his family members had harassed him in numerous ways, including by intentionally setting off a truck alarm, calling Mitiku names, and standing in the garage staring at Mitiku's daughter. The court granted Mitiku a TRO without a stay-away order.

In October 2017, Judge Tamila Ipema presided over a hearing on the petition and cross-petition. After the hearing, the court found Mitiku did not meet his burden of proof on his affirmative petition, and denied the petition "with prejudice in its entirety." Mitiku did not appeal from this ruling.

---

[2]    On our own motion, we have taken judicial notice of Roderic's petition which is not contained in the appellate record.

As to Roderic's petition, Judge Ipema viewed his home surveillance video depicting Mitiku's conduct, and heard testimony by the parties. Based on the evidence, the court found "bad behavior by [Mitiku]." But Judge Ipema accepted the parties' stipulation that the TRO would be continued for one year, with a return hearing date on October 22, 2018.

Before the October 2018 scheduled hearing, in March 2018, Mitiku filed a second petition for a civil harassment restraining order against Roderic's son, Shandle. On that date, Judge Richard Whitney denied Mitiku's request for a TRO. Judge Whitney scheduled a hearing on the petition for a permanent restraining order for October 22, 2018, the same date as the scheduled renewed hearing on Roderic's petition.[3]

On October 22, 2018, Judge Whitney held a hearing on the parties' petitions for permanent restraining order (Mitiku's second petition and Roderic's continued petition). On Mitiku's petition, the court found Mitiku did not produce clear and convincing evidence supporting his allegations, and thus denied the petition. The court said Mitiku may file a new petition " 'regarding any *new future* incidents but not as to the issues stated today.' " Mitiku did not appeal from this order.

On Roderic's petition, Judge Whitney heard testimony from the parties and reviewed photographs. At the conclusion of the hearing, the court issued a minute order stating: "[Mitiku] informs the Court that he will be moving from the residence. At the direction of the Court, the matter is continued to allow time for [Mitiku] to move out."

---

3   Mitiku attempted to appeal from Judge Whitney's order scheduling the matter to be heard with Roderic's petition, but the appeal was dismissed because it was not an appeal from a final order and it was untimely.

The next month, on November 30, 2018, Mitiku filed a third petition for a restraining order against Shandle, claiming Shandle has engaged in harassing conduct " 'from 2008 to [the] present day.' " Mitiku attached about 100 pages to his petition. Those documents included: (1) 51 typed pages detailing his grievances over that time period; (2) a list of 58 homes he investigated for a possible move; (3) a detailed description of vandalism allegedly committed by Shandle; (4) a typed document of unknown origin which he said identified an arrest of Shandle for " '266(H)A-pimping by Orange County Sheriff Department [on] December 22, 2016' "; (5) many photographs and parts of photographs showing the street on which the parties live, Roderic's parked vehicle, Mitiku exiting his driveway, and related items; (6) a document that appears to be a police call log showing numerous calls between May 1, 2008 and October 1, 2017; and (7) photographs and documents reflecting Mitiku's "strong commitment to his religion and his congregation's recognition of Mitiku's devotion and service." The court (Judge Lorna Alksne) granted Mitiku a TRO pending the hearing on the permanent injunction.

### December 17, 2018 Hearing and Orders

On December 17, 2018, Judge Frederick Mandabach presided over an evidentiary hearing on Roderic's petition against Mitiku, and on Mitiku's most recent (third) petition. The parties informed the court they wished to proceed on the motions because Mitiku had not moved and disputes were continuing. Before the hearing, the court told the parties the matter was not being reported by a court reporter, and there is no indication either party asked for a court reporter.

After the hearing, the court made final rulings on Roderic's petition for restraining order and on Mitiku's third petition for restraining order.

As to Roderic's petition, the court ordered a permanent restraining order against Mitiku.  In its written ruling, the court stated that "after careful review of the entire record . . . [,] [¶] [t]he court finds that [Roderic] has met the high burden of proof that is required," and "has proved [his] case by . . . [c]lear and [c]onvincing [e]vidence under [section] 527.6 . . . ."  The court issued a five-year restraining order enjoining Mitiku from harassing and/or contacting Roderic, his wife, his grandson, and Shandle, and ordering Mitiku to stay 100 yards away from these individuals and the Bentley family's home and vehicles (20 yards when Mitiku is at his residence).  The court also prohibited Mitiku from owning or possessing firearms, and ordered him to turn in any firearms in his possession.

On Mitiku's petition, the court denied the petition, finding "he had not met his burden [by] clear and convincing evidence."  The court stated that Mitiku "may refile regarding any new future incidents but not as to the issues stated today."

## Appeals and Settled Statements

Mitiku first appealed from the order on Roderic's affirmative case. Shortly after, Mitiku requested the trial court issue a settled statement, and submitted a proposed settled statement.  (Cal. Rule of Court, rule 8.137.) After a hearing, the court made a finding that Mitiku's proposed statement and amended statements were not accurate, and therefore prepared its own settled statement.

In the statement, the court summarized Roderic's evidence.  The court stated that Roderic, who had retired from the military after 30 years, testified that Mitiku had engaged in "angry close encounter confrontations" with his family over a lengthy period, and that "despite continuances to see if the friction would be reduced, Mitiku had never ceased his harassment."

6

Roderic testified Mitiku would repeatedly demand that the Bentleys not park in front of their home, not sit in a parked car, not have their garage door open, not use surveillance cameras on their home, and not allow their son to live in the home.  Roderic also "testified that Mitiku . . . engaged in aggressive, confrontational driving."  Roderic and his family members testified they "were certain that Mitiku would continue his harassment unless prevented by law enforcement."  The court stated it found the Bentleys to be credible witnesses, and in reaching this conclusion it had considered the factors contained in CACI No. 107.[4]

The court then described Mitiku's responding evidence:

> "When it was Mitiku's opportunity to cross-examine, he launched into detailing his grievances against the Bentleys going back to 2008.  Rather than wait for his [third petition] case to be called . . . [,] Mitiku appeared to wish to treat his most recent filing . . . as a counter to [Roderic's] petition.  Mitiku launched into testimony and presentation of his attachments and argued that his more than 100 pages attached to his [third] petition . . . constituted a justification for his actions.  He argued that his photographs were proof of his position.  Mitiku argued that he was an upstanding person who was a doctoral student while he worked a demanding job.  Mitiku stated that the Bentley[s] as well as their neighbors were fostering a program of prostitution and that [Shandle] was seeking to recruit women for the sex trade.  Despite the fervor of

---

4      CACI No. 107 identifies factors relevant to considering witness credibility, including:  "(a) How well did the witness see, hear, or otherwise sense what the witness described in court? [¶] (b) How well did the witness remember and describe what happened? [¶] (c) How did the witness look, act, and speak while testifying?  [¶] (d) Did the witness have any reason to say something that was not true? . . . [and] [¶] (e) What was the witness's attitude toward this case or about giving testimony?"

7

Mitiku's presentation, he offered nothing new as required for a petition after the same issues have been adjudicated."

Several months later, Mitiku filed a timely appeal from the order denying his third petition. He then asked Judge Mandabach to issue a settled statement for that case, and submitted a proposed statement. After a hearing on this request, the court declined to issue an additional settled statement. The court referred to its prior settled statement from the same hearing and noted that Mitiku's third petition was largely repetitive of the first two petitions, which prior judicial officers had found to be without merit and from which Mitiku had not appealed. Thus, the court found Mitiku was bound by the prior rulings. The court stated: "This judge found no alleged incidents that had not been previously adjudicated with final orders."

## DISCUSSION

In his appellate briefs, Mitiku challenges the court's orders. In Part I, we summarize appellate review rules. In Part II, we describe the law applicable to civil harassment restraining orders. In Part III, we discuss Mitiku's challenges to the court order granting Roderic's petition. In Part IV, we discuss Mitiku's challenges to the court order denying his petition.

## I. Appellate Burdens

A fundamental rule of appellate review is that an appealed judgment is presumed correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham,* at p 564.) If the judgment or order is correct on any theory, the appellate court will affirm it. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

8

To overcome this presumption, an appellant has the burden of showing reversible error by an adequate record. (*Jameson, supra,* 5 Cal.5th at p. 609; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) In doing so, the appellant must provide supporting citations to the factual record. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.) The appellant must also "support each point by argument and, if possible, by citation of [legal] authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).)

An appeal is not a second trial. The role of an appellate court is to determine whether any error occurred, and if so, whether that error affected the outcome of the proceeding (a concept known as "prejudicial error"). Absent a showing of error and prejudice, a Court of Appeal cannot remand a matter for a new hearing, even if the appellant believes he or she could prevail if given a second chance. (See *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Additionally, when reviewing an appellate record, a Court of Appeal cannot reweigh the evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 (*Curcio*).) We are required to "resolve all factual conflicts and questions of credibility" in the prevailing party's favor and uphold the trial court's finding "if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) An appellate court " ' "must *presume* that the record contains evidence to support every finding of fact . . . ." ' [Citations.] It is the appellant's burden . . . to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

9

## II. Section 527.6

The parties sought restraining orders under section 527.6, which permits a court to issue a protective order against a person who has engaged in "harassment." (§ 527.6, subd. (a); see *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188-189 (*R.D.*).) "Harassment" under this law means "unlawful violence, a credible threat of violence, *or* a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3), italics added.)

The purpose of section 527.6 " 'is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1266.) Thus, "[a]n injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 (*Harris*).)

Before imposing a protective order, a trial court must find clear and convincing evidence that unlawful harassment exists and is likely to recur in the future. (§ 527.6, subd. (i).) A court's findings whether this proof burden has been met will be affirmed if supported by substantial evidence. (*Harris*, *supra*, 248 Cal.App.4th at p. 497.)

In applying the substantial evidence test to a court's findings reached under the clear-and-convincing proof burden, we evaluate the evidence under a "heightened degree of certainty" rule. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 997.) Under this rule, we must consider "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it *highly probable* that the fact was true." (*Id.* at p. 996,

italics added.) In conducting this review, we apply the usual rules for analyzing the record. We must "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Ibid.*)

We evaluate Mitiku's appellate arguments under these review standards.

### III. Court's Issuance of Protective Order Against Mitiku

Mitiku first challenges the court's issuance of the protective order against him.

The court found Roderic met his burden by clear and convincing evidence to show the basis for a section 527.6 restraining order. This finding was supported by the record. As set forth in the settled statement, Roderic presented evidence showing Mitiku repeatedly confronted Roderic and his family in an angry and aggressive manner, and used his vehicle to threaten these individuals. These actions occurred over a two- to three-year period.

This evidence supported the court's finding that Mitiku engaged in unlawful harassment, defined to include a knowing and willful course of conduct that had no legitimate purpose and seriously alarmed, annoyed, and harassed the moving party. (§ 527.6, subd. (b)(3).) The evidence further supported that these confrontations were likely to continue without a protective order. Although Mitiku was given numerous warnings and chances to rectify his behavior, he continued to engage in the harassment and the Bentley family members testified that there was no likelihood Mitiku would stop his conduct without law enforcement involvement.

In challenging the court's findings, Mitiku discusses his claims that Roderic and his family have harassed him. He argues that Roderic and

11

Shandle are "fostering a program of prostitution," and devotes much of his brief to asserting that Shandle was arrested and convicted for "pimping" and "pandering." He also identifies numerous alleged actions by Roderic and his family, such as "throw[ing] [d]ead animals in [his] backyard"; stealing his wife's license plate; breaking items on his cars; stealing his debit card and using more than $13,000 credit from the card; stealing his wife's social security numbers; and spraying insecticide in his driveway.

These arguments do not show reversible error. First, in support of these arguments, Mitiku cites only to his own attachments to his petition in the court below. The court found this evidence to be unsupported, and made a specific finding that the Bentley family's testimony was "credible." Because a Court of Appeal does not reweigh the evidence we are bound by the court's findings. (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1492.) Second, Mitiku's assertions pertain mainly to the Bentley family's claimed conduct against himself (which we address in the part IV of this opinion). Mitiku does not specifically deny engaging in the harassment against the Bentley family.

Other than discussing his own claims (which were rejected by the trial court), Mitiku does not identify any legal basis for his assertion that the court erred in finding Roderic presented clear and convincing evidence showing Mitiku had engaged in harassment prohibited under section 527.6. The court's issuance of the protective order was therefore proper.

### IV. Court's Finding Mitiku Did Not Prove his Case

Mitiku next challenges the court's findings that he did not prove his claims asserted in his third petition for a restraining order.

The court found Mitiku did not prove his affirmative case by clear and convincing evidence because the court did not find Mitiku's evidence reliable

12

to show that Shandle or other family members had engaged in the claimed harassment. In addition, the court found Mitiku was precluded from prevailing on his third petition because two judges in final orders had previously found the same claims to be unsupported.

In challenging these findings, Mitiku again asserts only his own version of the facts, including his claims that the Bentley family are using the public streets for "pimping," "pandering," drinking alcohol, and "human traffic activities." He repeatedly states that Shandle was arrested and convicted of various offenses. He argues that the Bentleys should not be entitled to park in front of their home because they are doing so "for human traffic activities." In support of these arguments, he cites only to his own written evidence which was submitted without foundation or authentication.

Mitiku's lengthy discussion of his version of the facts does not establish a basis to reverse the court's order. " ' "We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment." ' " (*Burquet*, *supra*, 223 Cal.App.4th at p. 1143.) "We do not determine credibility or reweigh the evidence. [Citation.] If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding." (*Curcio, supra,* 47 Cal.App.5th at p. 12.)

On our careful review of the record and Mitiku's brief challenging the denial of his restraining order petition, there is no legal basis to reverse the court's factual or legal determinations. Mitiku had a full and fair opportunity to present his case in the proceedings below. The court found he did not prove his allegations by clear and convincing evidence. He provides no grounds to suggest the court erred in weighing the evidence and reaching this conclusion. Even assuming it is true that Shandle had an arrest or

conviction, this does not support that Shandle engaged in unlawful harassment against Mitiku.  The court, as the factfinder, was not required to credit Mitiku's assertions, and had a reasonable basis to find his testimony and documentary evidence did not support his harassment claims, and/or that the evidence was not adequately explained or authenticated.

Moreover, the court properly found that Mitiku was precluded from prevailing on his third petition to the extent the claims had already been litigated in his two prior petitions.  Two legal doctrines apply here.  First, res judicata, or claim preclusion, prevents a plaintiff from subjecting a defendant to multiple actions stemming from the same alleged conduct.  (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.)  Second, collateral estoppel, or issue preclusion, prevents relitigation of issues litigated and determined in a prior proceeding.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

The court reviewed the file and determined Mitiku had made the same factual claims in his two prior petitions, each of which were denied by a final appealable order after a hearing.  (See § 904.1, subd. (a)(6); *R.D. supra,* 202 Cal.App.4th at p. 187.)  After the second denial, Judge Whitney specifically informed Mitiku that if he filed a third civil harassment restraining order petition, he was limited to alleging new facts that occurred after the court's order.  On this record and based on the res judicata and collateral estoppel doctrines, Judge Mandabach properly found Mitiku could not relitigate the issues resolved against him in the prior orders.

Finally, to the extent Mitiku suggests the court erred in ordering him to move from the neighborhood, this claim is not supported.  The record shows Mitiku told the court at various times that he intended to move, and based on this representation, Roderic stipulated to a one-year continuance in

14

October 2017 and the court granted Mitiku another continuance at the hearing held one year later. There is nothing in the record showing the court ordered or directed Mitiku to move his residence.

## DISPOSITION

Orders affirmed. The parties to bear their own costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.